UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHELTIERE S. BROOKS, II,

                      Plaintiff,    No. 6:17-cv-6614(MAT)

            v.                **DECISION and ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

---

## **INTRODUCTION**

Sheltiere S. Brooks, II, ("Plaintiff"), who is represented by counsel, brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") benefits. Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. #10, 13.

## **BACKGROUND**

### A. Procedural History

Plaintiff filed an application for SSI on February 11, 2014, alleging disability beginning September 1, 1993. T. 154-60.[1] Plaintiff's application was initially denied on August 11, 2014,

---

[1] "T.__" refers to pages of the administrative record. Dkt. #7.

1

and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). T. 70-86.

ALJ Michael Devlin conducted a hearing in Rochester, New York, on October 25, 2016, during which Plaintiff appeared with counsel and testified. A vocational expert also testified. T. 31-50.

On February 1, 2017, the ALJ issued a decision finding Plaintiff not disabled. T. 15-30. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied. T. 1-6. The ALJ's determination thus became the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 1383(c)(3). This action followed. Dkt. #1.

The issue before the Court is whether the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and free of legal error. See Pl. Mem. (Dkt. #10-1) 9-30; Comm'r Mem. (Dkt. #13-1) 9-24.

**B. The ALJ's Decision**

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in

2

substantial gainful activity since February 11, 2014; (2) he had the severe impairments of bipolar disorder with psychotic features, currently mild; psychosis, unspecified; Attention Deficit Hyperactivity Disorder ("ADHD"); intellectual disability (borderline IQ); and antisocial personality disorder; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: the ability to understand, remember, and carry out simple instructions and tasks, occasionally interact with co-workers and supervisors, little to no contact with the general public, able to work in a low stress work environment (i.e., no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.), and is able to consistently maintain concentration and focus for up to two hours at a time; (4) Plaintiff had no past relevant work; and (5) relying upon on vocational expert testimony, the ALJ determined that a person with Plaintiff's age, education, and RFC, he could perform the jobs of office cleaner, hand packager, and restaurant dishwasher. T. 15-27.

**DISCUSSION**

**A. Scope of Review**

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

**B. Credibility Finding**

Plaintiff contends that remand of this matter is warranted for the following reasons: (1) the ALJ's RFC finding is not based on substantial evidence because the ALJ relied upon gaps in the record and improperly evaluated the opinion testimony; and (2) the ALJ's credibility determination is not supported by substantial evidence.[2] For the reasons discussed below, the Court finds that the ALJ erred in failing to support his credibility finding with substantial evidence. Because the Court finds that remand of this matter is appropriate, it need not consider

---
[2] Plaintiff argues that the ALJ failed to evaluate Plaintiff's credibility pursuant to the appropriate legal standard. Pl. Mem. 24. In support of his argument, Plaintiff cites to SSR-96-7p, which was superseded by SSR 16-3p (effective March 28, 2016). See SSR 16-3p, 2016 WL 1119029, at *1; SSR 96-7p, 1996 WL 374186, at *1. On October 25, 2017, the SSA republished SSR 16-3p, detailing how to apply the ruling as it relates to the applicable date. Specifically, the SSA indicated that adjudicators should apply SSR 16-3p when making a determination on or after March 28, 2016. See SSR 16-3p, 2017 WL 5180304, at *1. Since the ALJ's decision was dated February 1, 2017, SSR 16-3p applies.

Plaintiff's contention concerning the effect of alleged gaps in the record.

While an ALJ's credibility assessment is entitled to deference, it must be supported by substantial evidence. See Hargrave v. Colvin, No. 12-CV-6308, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) ("Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence.").

Under SSR 16-3p, when evaluating a claimant's symptom intensity, "[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record." Vered v. Colvin, No. 14-CV-4590, 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017) (citing SSR 16-3P, 2016 WL 1119029, at *4-6). Furthermore, SSR 16-3p makes clear that the evaluation of a claimant's subjective symptoms is not an evaluation of the claimant's character. SSR 16-3p, 2016 WL 1119029, at *1.

Here, the ALJ found Plaintiff's allegations "not entirely credible for the reasons explained in the decision," and that

5

"these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with objective medical and other evidence." T. 23. The ALJ then provided five reasons for rejecting Plaintiff's allegations of debilitating limitations. T. 23-24.

1. Daily Activities

First, the ALJ found that "the claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." T. 24.

The ALJ did not cite to any examples of Plaintiff's activities that show Plaintiff can work at the level identified within the RFC finding on a regular and continuing basis. However, determining that Plaintiff had a mild limitation in understanding, remembering, or applying information, and in interacting with others, the ALJ pointed to his ability to dress, bathe, and groom as well as provide care for his young daughters, and could socialize with his grandparents, with whom he lived. T. 21. "The mundane tasks of life performed by plaintiff do not indicate that she is able to perform a full day of sedentary work." Polidoro v. Apfel, No. 98 CIV. 2071, 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) (citing Balsamo, 142 F.3d at 81); see

6

also Harris v. Colvin, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016). The record demonstrates that Plaintiff's limitations in daily activities are greater than as characterized by the ALJ. The report of consultative examiner Christine Ransom, to which the ALJ afforded "significant weight," reflects that Plaintiff had difficulty with cooking, cleaning, laundry, and shopping due to disorganized behavior. T. 291. He was unable to manage money due to difficulty concentrating and following through on tasks. T. 291. He had difficulty socializing due to mood swings. T. 291. He did not know how to drive. T. 291.

In July and August of 2011, Melvin Zax, Ph.D., administered a psychological evaluation. T. 229-32. Dr. Zax noted that Plaintiff did not drive, could not prepare food, and his mother managed his money. T. 229-30. The ALJ afforded "significant weight" to Dr. Zax's statement that Plaintiff "recognizes that some of his behavior is aggressive, contemptuous of others, and inappropriate, he openly admits he enjoys it. I think this is a very serious problem for him and needs considerable attention at this point in his life." T. 232. Dr. Zax opined that Plaintiff had a "number of problems relating to people, particularly authority, over the years." T. 323. He assessed a "very guarded" prognosis. Id.

Stephanie Beneski-Barlow, D.O., who treated Plaintiff, completed a Mental Impairment Questionnaire on September 26, 2016. T. 328. Dr. Beneski-Barlow indicated that Plaintiff relied upon his grandmother for primary support and he appeared unable to function without her present. T. 330. She assessed a marked limitation in concentration, persistence, or pace. T. 329.

Plaintiff's Disability Report (Form SSA-3367) notes "male, young adult, low intellectual functioning. Unable to read the application taken. He was in the office with his grandmother. Grandmother was helping him with his application." T. 202.

Plaintiff testified at the administrative hearing that he lived with his grandparents, did not know how to read, did not know what "subtracting" was, and had never cashed a check or driven a car. T. 35-36, 38-41. He completed tenth grade and later enrolled in a GED program through drug court, but did not obtain a GED. T. 37. He testified that he had one prior job attempt, as a school cleaner, for one-and-one-half days, and he was unable to perform the job because "they said [ ] that there was no reason for me to even come back." T. 37-38. When Plaintiff's daughter visited, she stayed with Plaintiff and his grandparents. T. 44.

The relevant record evidence suggests, therefore, that the ALJ improperly determined that Plaintiff's activities of daily

living were inconsistent with his alleged impairments, and not supportive of an adverse credibility determination.

2. Noncompliance

The ALJ next found that Plaintiff's "treatment has been essentially routine and conservative," "sporadic in nature," and noted that Plaintiff was discharged from treatment for poor attendance. T. 24.

The Court acknowledges that the ALJ was entitled to consider Plaintiff's discharge from treatment due to poor attendance as a factor weighing against his subjective statements. T. 24. See SSR 16-3p ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). "However, before determining any impact on credibility, the ALJ must 'consider[ ] any explanations that the individual may provide ... that may explain infrequent or irregular medical visits or failure to seek medical treatment.'" Dougherty-Noteboom v. Berryhill, No. 17-CV-0243, 2018 WL 3866671, at *5 (W.D.N.Y. Aug. 15, 2018). The ALJ may therefore consider whether "[d]ue to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not

be aware that he or she has a disorder that requires treatment." SSR 16-3p.

The Discharge Note from DePaul PROS[3] indicates the reason for Plaintiff's discharge as "functional and/or mental status issues." Specifically, "Sheltiere struggled with maintaining attendance and sitting still when he was able to participate." T. 306.

Courts in this Circuit have cautioned that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008) (internal quotation omitted); accord, Cox v. Astrue, 993 F. Supp. 2d 169 (N.D.N.Y. 2012). Here, the record indicates that Plaintiff regularly exhibited fair to poor judgment, poor/impaired insight, and significant attention and concentration difficulties. T. 41-42, 55, 185, 230, 266, 286, 291 328-29. The ALJ therefore failed to consider the possibility that Plaintiff's mental impairments prevented him from fully complying with recommended treatment. See Cox, 993 F. Supp. 2d at 186.

---

[3] Personalized Recovery Oriented Services ("PROS") is a comprehensive recovery oriented program for adult individuals with severe and persistent mental illness.

3. <u>Disability Opinion</u>

Third, the ALJ found that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is currently disabled." T. 24. However, a determination as to whether a claimant is currently disabled is reserved to the Commissioner, and the ALJ would be able to reject this statement. <u>See</u> <u>Pike v. Colvin</u>, No. 14-CV-159, 2015 WL 1280484, at *6 (W.D.N.Y. Mar. 20, 2015).[4] The Court acknowledges that this was one of several factors considered by the ALJ in evaluating the Plaintiff's complaints, however, as discussed throughout this Decision and Order, the pervasive errors in the ALJ's credibility finding require remand.

4. <u>Work History</u>

Fourth, the ALJ observed that Plaintiff's work history showed that he had not worked prior to the alleged disability onset date,[5] raising the question as to "whether the claimant's continuing unemployment is actually due to medical impairments." T. 24.

---

[4] Treating physician Dr. Beneski-Barlow opined that Plaintiff had marked limitations in concentration, persistence, and pace, and would be absent from work at least three days per month. T. 25, 330. The ALJ rejected her opinion as "highly conjectural" and "not supported by the record." T. 25.

[5] Plaintiff, who was born in 1990 and was 24 years old on the date of his application, alleges disability beginning September 1, 1993. T. 52, 201-02.

The Court notes that Plaintiff was found disabled and was previously granted childhood disability benefits in June of 2003. T. 201. At the time of Dr. Zax's evaluation in 2011, Plaintiff was "currently on SSI and is considered Learning Disabled." T. 229. Thus, Plaintiff would have no work history for the period of 1993 through 2011.

Further, Plaintiff's work history is contained in his SSI application, showing earnings of $182.75 by Premier Janitorial Management, Inc. in the year 2012. That is the same year Plaintiff first applied for and was denied adult disability benefits. T. 161-71. It is well-settled that the ALJ's recitation of the facts contained in the credibility assessment must be accurate. See Meadors v. Astrue, 370 Fed. Appx. 179, 184 (2d Cir. 2010); Andrews v. Colvin, No. 12-CV-6651, 2013 WL 5878114, *12 (W.D.N.Y.2013) ("[t]he ALJ's recitation of the facts contained in the credibility assessment must be accurate and contain an explanation why they undermine the credibility of the witness."). Here, the ALJ failed to include Plaintiff's period of disability in summarizing his work history.

Additional record evidence indicates that Plaintiff's limited employment history might not necessarily cast doubts upon his desire to work. In 2011, Plaintiff told Dr. Zax that "he would like a job and does not much care what it would be," and

12

his therapist reported in 2015 that Plaintiff "wants to work and has had interpersonal difficulties on the job in the past." T. 230, 310. It is therefore unclear whether the ALJ followed SSR 16-3ps directive to "consider <u>all of the evidence</u> in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. (emphasis added).

5. <u>Observation at the Administrative Hearing</u>

Fifth, the ALJ found:

> [T]he claimant betrayed no evidence of debilitating symptoms while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning on a day-to-day basis, the apparent lack of debilitating symptoms during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

T. 24.

On appeal, "an ALJ's credibility finding is entitled to deference and will be set aside only if it is not set forth 'with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence.'" <u>Illenberg v. Colvin</u>, No. 13-CV-9016, 2014 WL 6969550, at *21 (S.D.N.Y. Dec. 9, 2014)(quoting <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir.

1984)); see also Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (Where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."). "It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).

Mindful of this standard, the Court nonetheless has concerns about ALJ's observations of Plaintiff during the 21-minute administrative hearing. T. 31-50. Plaintiff did not know the meaning of "testimony," or "military service," or what it meant to subtract a number. T. 31-36, 39. He testified that he could not read, multiply or divide, or how to make correct change at a store. T. 38-39. For example,

> ALJ: Okay, if you were to go to a store and buy some things at the store, would you be able to know what the correct change would be when you gave the cashier money?
>
> Pltf: Like what you mean?
>
> ALJ: Like when you--say you wanted to go to the store and buy a loaf of bread and your grandma gave you a $5 bill and you went to the store and the cashier told you the bread cost $1.40 and you gave them $5, would you know how much change would be the correct amount to get back?

14

> Pltf: Like how--like how much is the bread worth?
>
> ALJ: Does your grandma ever send you to the store to buy things or does she usually go with you?
>
> Pltf: Yeah, she normally go with me.

T. 39-40.

He testified that he has never driven a car because he was scared "by [him]self," and that there were "too much people" for him to take the city bus. T. 40. He preferred to stay at home with his grandparents and did not have any friends because "[e]verybody think I'm like weird or something." T. 41. Plaintiff asked the ALJ to repeat and rephrase questions throughout the hearing:

> ALJ: Do you have difficulty understanding things and maintaining concentration, the ability to focus and think clearly for periods of time?
>
> Pltf: I'm sorry I don't--I don't get that kind of question.

T. 42. He testified that his grandmother would help him choose his clothing. T. 45. Plaintiff told the ALJ that his young daughter lived in a "town or a country" that "start[s] with a K, Kentucky or Connecticut." T. 44. He was in special education ("I had a little bus, the little yellow bus. It's embarrassing."), and did not complete his GED ("I wasn't learning nothing."). T. 36, 46.

Plaintiff's testimony appears consistent with his subjective complaints, supported by his special education background, documented difficulties with concentration and attention, and limited activities of daily living. "[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion" and that while an ALJ is "free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." Balsamo, 142 F.3d at 81 (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). The ALJ's brief interaction with Plaintiff is not "the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000) (citing Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 862 (2d Cir. 1990)).

In summary, although the ALJ provided specific reasons for discounting Plaintiff's credibility, several of the proffered reasons do not support his determination. These factual errors alone would require remand. See Horan v. Astrue, 350 Fed. Appx. 483, 485 (2d Cir. 2009) (unpublished opn.) (remand appropriate

because the ALJ's credibility determination was based on factual errors).

Significantly, Plaintiff received childhood disability benefits from 2003 through at least 2011, the date of Dr. Zax's psychological evaluation. He then applied for adult benefits and was initially denied in December, 2012. The current application for benefits is dated June 12, 2014. The ALJ did not note this in his decision, even though the Disability Report indicates that Plaintiff's prior claims folder was available. T. 201.

A review of the entire record reveals limited activities of daily living and limited adaptive functioning, consistent with Plaintiff's subjective complaints and hearing testimony. Plaintiff was previously found disabled and is still disabled due to the same medical conditions. The ALJ's opinion cited no evidence indicating that Plaintiff's conditions have improved. Finally, the ALJ, in evaluating Plaintiff's credibility, mischaracterized Plaintiff's daily activities with the ability to perform substantial gainful employment on a full-time basis.

In considering a social security appeal, a district court may itself determine disability instead of remanding if "application of the correct legal standard could lead to only one conclusion." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). See also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.

17

1987); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) ("[W]e have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."). Here, the application of the correct legal principles to the facts in the record supports the conclusion that Plaintiff is disabled under the Act.

## CONCLUSION

For the reasons discussed above, the Court finds that the Commissioner's factual findings are not supported by substantial evidence and the final determination was legally flawed. Accordingly, the Commissioner's decision is reversed, and the matter remanded solely for the calculation and award of benefits.

Plaintiff's motion for judgment on the pleadings (Dkt. #10) is therefore granted and the Commissioner's motion for the same relief (Dkt. #13) is denied. The Clerk of the Court is directed to enter judgment in accordance with this Decision and Order.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 8, 2019
Rochester, New York.